IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 20, 2010 Session

# GARY C. BULLINGTON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sumner County**
**No.  167-2008    Dee David Gay, Judge**

---

**No.  M2009-00835-CCA-R3-PC - Filed September 15, 2010**

---

Petitioner, Gary C. Bullington, was convicted of driving under the influence ("DUI"), felony evading arrest, driving on a revoked license, and two counts of vehicular assault.  *State v. Bullington*, No. M2005-02227-CCA-R3-CD, 2006 WL 1816325, at *1 (Tenn. Crim. App., at Nashville, June 27, 2006), *perm. app. denied*, (Tenn. Oct. 30, 2006).  Petitioner filed a pro se petition for post-conviction relief.  The post-conviction court initially determined that the petition was not time-barred because Petitioner did not receive notice of the denial of permission to appeal.  After a hearing, the post-conviction court determined that counsel was ineffective in two areas but denied post-conviction relief on the basis that Petitioner did not suffer prejudice as a result of the deficiency.  Petitioner now appeals the denial of post-conviction relief.  After a review of the record, we determine Petitioner has failed to show that he was prejudiced by counsel's actions.  Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

James B. Hawkins, Gallatin, Tennessee, for the appellant, Gary C. Bullington.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General, and Lytle Anthony James, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

At trial, the following testimony, as summarized by this Court on direct appeal, led to Petitioner's convictions:

[O]n November 6, 2003, Trooper Jose Negrin of the Tennessee Highway Patrol was "running moving radar on South Water" Avenue in Gallatin, Tennessee. At approximately 9:00 p.m., he observed the Defendant's vehicle "doing 47 in a 30-mile-an-hour zone." Officer Negrin activated his blue lights and pursued the Defendant to effectuate a stop of the vehicle. According to Officer Negrin, he had to accelerate "extremely fast to try to catch up" because "it was apparent" the Defendant had "no intention of stopping." During this pursuit, the Defendant attempted unsuccessfully to negotiate a turn and crashed the vehicle "into a culvert." Upon crashing, the Defendant exited the vehicle and began to run. The Defendant stopped running when he realized escape was futile, and Trooper Negrin thereafter detained the Defendant.

Officer Jeff Wright of the Gallatin Police Department arrived on the scene behind Trooper Negrin. Officer Wright assisted in securing the Defendant in the back of a patrol car and then checked on the two passengers in the Defendant's vehicle, Ms. Melissa Duffer and Mr. George Stafford. Ms. Duffer suffered a broken leg, and Mr. Stafford sustained injuries to his nose. Both were taken to Sumner Regional Medical Center for treatment.

Officer Wright stated that, prior to securing the Defendant, he "noted an odor of alcoholic beverage emitting from his person." After assisting with the injured passengers, he asked the Defendant to submit to field sobriety tests, and the Defendant agreed. Officer Wright reported that the Defendant failed three of four tasks, and he concluded that the Defendant's ability to operate a motor vehicle "was impaired above the legal limit." The Defendant was arrested and, thereafter, consented to blood testing for alcohol and drugs. He was transported to Sumner Regional Medical Center, where two tubes of blood were drawn.

The blood was submitted to the Tennessee Bureau of Investigation ("TBI") for testing. The result of the blood-alcohol test on the specimen

-2-

indicated an alcohol content of ".09 gram percent blood alcohol." The Defendant's blood also contained "less than 0.05 micrograms per milliliter" of both cocaine and cocaethylene.

During the April 2003 term, a Sumner County grand jury returned a twelve-count indictment against the Defendant, charging him with two alternative counts of DUI; two counts of driving while license suspended, cancelled, or revoked; two counts of vehicular assault; one count of felony evading arrest; one count of simple possession of marijuana; one count of possession of drug paraphernalia; two counts alleging eight prior convictions for driving while license suspended, cancelled, or revoked; and one count alleging seven prior convictions for DUI.

On January 26, 2005, the Defendant filed a "Motion to Order DNA Test" on the blood sample "given by the Defendant upon the occasion of his arrest [.] . . . Said test is for the purpose of making sure that the sample tested was truly that of the Defendant." In support of the motion, the Defendant alleged that he had "only consumed one beer on the day of his arrest" and that "the blood alcohol level of .9 [sic] reported in the blood sample is inconsistent with the amount of alcohol consumed." The motion was denied by written order dated January 28, 2005.

On February 3, 2005, the Defendant filed a motion to suppress the drug and alcohol test results. The Defendant again questioned the "authenticity of the blood sample" and stated that the sample "has been destroyed rendering positive identification of the blood sample in question impossible." A brief hearing was held on February 7, 2005, and the trial court denied the Defendant's motion to suppress, finding that "we go through these all the time and obviously the state has to prove the chain of evidence. So just based on the fact that he couldn't have an independent DNA analysis is not grounds to suppress the results."

Also on February 7, the Defendant pled guilty to one count of driving on a revoked license, ninth offense. In exchange for his plea, the State recommended that the charges of simple possession, possession of drug paraphernalia, and the remaining count of driving while license suspended, cancelled, or revoked be declared nolle prosequi. The trial court accepted the Defendant's plea and dropped the recommended charges.

The following day, February 8, 2005, a jury trial was held on the remaining counts. Following the presentation of evidence and the arguments of counsel, the Defendant was convicted of DUI, felony evading arrest, and two counts of vehicular assault. Thereafter, on March 24, 2005, the trial court imposed an effective sentence of twenty-four years, . . . .

*State v. Gary C. Bullington*, 2006 WL 1816325, at *1-2 (footnotes omitted).

On appeal, Petitioner argued that the trial court erroneously denied the motion to suppress drug and alcohol test results. This Court determined that the test results were admissible. *Id.* at *1. However, this Court found plain error in that "double jeopardy principles require us to vacate [Petitioner's] DUI conviction." *Id.* The Tennessee Supreme Court denied permission to appeal on October 30, 2006.

On February 11, 2008, Petitioner filed a pro se petition for post-conviction relief. An attorney was appointed to represent Petitioner, and the post-conviction court ordered a hearing for the limited purpose of determining whether the statute of limitations should be tolled for due process considerations. After a hearing, the post-conviction court determined that Petitioner "did not receive notification that the Tennessee Supreme Court denied [Petitioner's] permission to appeal." Therefore, the petition was deemed timely filed and the post-conviction court ordered a hearing on the petition.

At the hearing on the petition for post-conviction relief, the post-conviction court heard the testimony of Petitioner, who recalled that he was arrested on November 6, 2003. After being arrested, he was released on bond. Petitioner then failed to appear for a court date. As a result, Petitioner was arrested and placed in custody, where he remained. Petitioner's original trial counsel withdrew from representation in October of 2004. A substitute counsel was appointed in December of 2004, two months prior to Petitioner's trial.

Petitioner's testimony at the hearing focused on several different allegations of ineffective assistance of counsel. Petitioner insisted that trial counsel was ineffective prior to trial because he failed to meet and communicate with Petitioner, failed to interview witnesses, and did not have a trial strategy. Petitioner also testified that trial counsel failed to recognize a defect in the indictment. Petitioner claimed that trial counsel failed to argue at trial that Petitioner's blood alcohol level was below the legal limit. Additionally, Petitioner insisted that trial counsel was ineffective on appeal because he only raised one issue and failed to notify Petitioner that the application for permission to appeal was denied. Further, Petitioner claimed that trial counsel was ineffective at sentencing because he did not provide adequate proof of mitigating factors.

Trial counsel testified at the hearing. He began practicing law in 2001. Approximately 60% to 70% of his practice comprised of criminal cases. He had also acted as a city judge for White House for approximately six years. Petitioner's case was actually his first criminal jury trial.

According to trial counsel, he and Petitioner met four or five times prior to trial, not including court dates. Trial counsel testified that he talked to Petitioner for the first time on December 16, 2004. Trial counsel did not have the discovery evidence at that time to pass on to Petitioner. Trial counsel eventually gave discovery to Petitioner. In fact, trial counsel recalled giving Petitioner copies of discovery twice. In addition, trial counsel went over discovery materials with Petitioner. Trial counsel admitted that he was unable to show Petitioner the police video because he did not have the proper equipment at the jail. However, trial counsel watched the video himself.

When trial counsel received the offer of an eighteen-year sentence from the State, he communicated that offer to Petitioner. Trial counsel insisted that Petitioner was adamant about going to trial and refused to plead guilty. Trial counsel described his relationship with Petitioner as difficult and recalled that Petitioner got upset at nearly every meeting.

About one week prior to trial, Petitioner told trial counsel that he fled from police because the accelerator stuck in his car. Up to that point, Petitioner had maintained that he was not being chased by police.

Trial counsel issued two subpoenas prior to trial for Petitioner's sister and mother. Petitioner informed trial counsel that his sister would testify that the accelerator on Petitioner's car was sticking. Trial counsel was hesitant to interview Petitioner's sister prior to trial because he was skeptical of her testimony. Trial counsel was afraid that if he interviewed Petitioner's sister prior to trial he would not be able to use her testimony at trial.

Trial counsel testified that it was in Petitioner's best interest not to testify because he had five prior felony convictions and at least twenty misdemeanor convictions. These all could have been used to impeach Petitioner at trial if he testified. Trial counsel explained that his trial strategy was to attack the evidence presented and to create reasonable doubt. However, trial counsel thought that the evidence against Petitioner was overwhelming.

Trial counsel explained that he did not hire an expert to test the sticking accelerator because he was not appointed until one year after the offenses were committed and the evidence was no longer available. Further, trial counsel determined that Petitioner's case would be "sunk" if an expert were hired and found nothing wrong with Petitioner's car.

Trial counsel recalled giving Petitioner a copy of the pre-sentence report prior to sentencing.

At the conclusion of the post-conviction hearing, the post-conviction court took the matter under advisement. In an order issued at a later date, the post-conviction court determined that trial counsel was ineffective because he had a: "(1) failure . . . to recognize a defect in the indictment; and (2) [a] failure . . . to notify the Petitioner that the Supreme Court had denied his permission to appeal." However, the post-conviction court determined that there was not a showing of "[c]lear and convincing evidence of any other deficiency."

The post-conviction court held that:

there was no prejudice to Petitioner resulting from either of these deficiencies. As to the flaw in the face of the indictment, any motion to address this matter must be addressed prior to trial, also any flaw or defect could have been cured by a superceding indictment or by amendment prior to trial. FN4

> FN4. An amendment to this indictment on another mistake was granted by the trial court the day before the trial. Further, an incorrect term of the grand jury articulated in the caption is not fatal. *State v. [Wilbur Leon] Deck*, [No. M2003-02334-CCA-R3-CD,] 2004 WL [57]8443 (Tenn. Crim. App.[, at Nashville, Feb. 10,] 2004). As stated in *Deck*, this indictment "met constitutional and statutory standards by providing the Defendant notice of the charges against him."

The Court also finds that the failure of counsel to notify the Petitioner that permission to appeal to the Supreme Court had been denied was not prejudicial. This Court granted an evidentiary hearing for the Petitioner on this issue and ruled in his favor, tolling the statute of limitations, so that Petitioner's Petition for Post-Conviction Relief could be heard.

As a result of the findings, the post-conviction court denied the petition for relief.

Petitioner filed a timely notice of appeal.

*Analysis*

On appeal, Petitioner challenges the trial court's denial of post-conviction relief. Specifically, Petitioner complains that the post-conviction court improperly determined that

there were only two instances of ineffective assistance of counsel. However, Petitioner fails to identify any additional ineffectiveness of trial counsel on appeal. Petitioner also argues that the post-conviction court improperly determined the deficiencies were not prejudicial.

*Post-Conviction Standard of Review*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Shields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*Ineffective Assistance of Counsel*

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the

defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The post-conviction court determined that trial counsel was ineffective for failing to recognize a defect in the indictment and for failing to notify Petitioner that the Supreme Court denied permission to appeal in his case. The post-conviction court found no prejudice because Petitioner was aware of the charges from the language in the indictment. Further, even though Petitioner was unaware that permission to appeal had been denied, the post-conviction court tolled the statute of limitations and allowed the petition to be heard on the merits despite its untimely filing.

The evidence does not preponderate against the determinations of the post-conviction court. There was overwhelming evidence of Petitioner's guilt, including a videotape of him running from police and blood alcohol tests that indicated Petitioner was under the influence of cocaine and alcohol at the time of the offenses. In fact, trial counsel testified that he could not have won the case if he walked "through the jury box with hundred dollar bills hanging out of [his] pocket." Further, as pointed out by the post-conviction court, a defect in the indictment related to the term of the grand jury does not render the indictment void. *Mitchell v. State*, 16 Tenn. 514, 527-28 (1835), *Janow v. State*, 567 S.W.2d 483, 484 (Tenn. Crim. App. 1978); *Wilbur Leon Deck*, 2004 WL 578443, at *3. Additionally, the post-conviction court reviewed the petition for post-conviction relief despite the fact that it was untimely filed after determining that trial counsel failed to notify Petitioner that permission to appeal was denied. In reviewing other aspects of ineffective assistance of counsel, the post-conviction court clearly accredited trial counsel's testimony. In his appeal, the Petitioner has failed to cite any evidence in the record of the post-conviction hearing that counters trial counsel's testimony. In fact, Petitioner fails to mention any other allegations of ineffective assistance of counsel on appeal.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.


_____

JERRY L. SMITH, JUDGE